United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

D. I.,[1]
Plaintiff,
v.
SSA COMMISSIONER, et al.,
Defendants.

Case No. 25-cv-10308-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 21, 22

## I. INTRODUCTION

Plaintiff D.I. moves for summary judgment to reverse the Social Security Administration's denial of her claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq. ECF No. 21 ("Pl.'s Mot."). The Commissioner cross-moves to affirm. ECF No. 22 ("Def.'s Mot."). Plaintiff filed a reply. ECF No. 28 ("Pl.'s Reply"). Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument. For the reasons stated below, the Court **GRANTS** Plaintiff's motion and **DENIES** the Commissioner's cross-motion.[2]

## II. PROCEDURAL HISTORY

On September 2, 2022, Plaintiff filed an application for Social Security Supplemental Security Income (SSI) benefits, stating a disability onset date of March 31, 2014.[3] Administrative Record (AR) 277–87. Following denial at the initial and reconsideration levels, Plaintiff requested

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 9.

[3] Plaintiff filed a protective application on August 17, 2022. AR 21, 299.

United States District Court
Northern District of California

a hearing before an Administrative Law Judge (ALJ). AR 93–110. An ALJ held a hearing on October 22, 2024, and issued an unfavorable decision on December 20, 2024. AR 15–38. The Appeals Council denied Plaintiff's request for review on October 1, 2025. AR 1–5. Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

## III. ISSUES FOR REVIEW

Plaintiff raises three issues on appeal: (1) whether the ALJ erred in evaluating the medical evidence; (2) whether the ALJ erred in evaluating Plaintiff's statements; and (3) whether the ALJ erred in determining Plaintiff's residual functional capacity. Pl.'s Mot. at 5. Plaintiff requests the Court remand with instructions to award benefits; alternatively, Plaintiff requests the Court remand for further administrative proceedings. *Id.* at 15.

In sum, the Court concludes that the ALJ erred in evaluating the medical opinions, other medical evidence, and Plaintiff's testimony. Because these errors necessarily impacted the remainder of the ALJ's decision, remand is warranted.

## IV. STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id.* Substantial means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up). Under this standard, which is "not high," the Court looks to the existing administrative record and asks, "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* at 102 (cleaned up).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). "The ALJ is responsible for determining credibility,

resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence can reasonably support either affirming or reversing a decision," the Court must defer to the ALJ's decision. *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision must be upheld if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (cleaned up). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (cleaned up). The Ninth Circuit has since reiterated that a reviewing court may affirm only on grounds actually invoked by the agency and may not supply a rationale the ALJ did not give. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1203–04 (9th Cir. 2024).

## V. DISCUSSION

### A. Framework for Determining Whether a Claimant Is Disabled

A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (citing 42 U.S.C. § 1382c(a)(3)(A) – (B)). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis. *See* 20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* at § 416.920(a)(4) (same standard for supplemental security income). The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," defined as "work done for pay or profit that involves significant mental or

physical activities." *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(i)) (cleaned up). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since August 17, 2022, the application date. AR 23.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," meaning "that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1522(a)). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff has the following severe impairments: "fibromyalgia; PTSD; depressive and anxiety disorders (20 CFR 416.920(c))." AR 24.

At step three, the ALJ evaluates whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the "listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); *id.* at Pt. 404 Subpt. P, App. 1. The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity." *Id.* at § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* at § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original) (footnote omitted). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 25.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses the claimant's residual functional capacity (RFC), defined as the most the claimant can still do despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to perform past relevant work, defined as "work that [the claimant has] done within the past five

United States District Court
Northern District of California

years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1)(i). If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled. *Id.* at § 404.1520(f). Here, the ALJ determined Plaintiff has no past relevant work. AR 31. The ALJ determined Plaintiff has the RFC

> to perform light work as defined in 20 CFR 416.967(b) except that the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk for 6 hours in an 8-hour workday and can sit for 6 hours in an 8-hour workday. The claimant can frequently climb ramps and stairs and can frequently balance, stoop, kneel, crouch, and crawl. She can frequently climb ladders, ropes, or scaffolds. She can perform simple, routine and repetitive tasks that require no interaction with the public except incidental interaction where the person is directing someone to the nearest restroom or exit. In addition, the claimant can briefly and superficially interact with coworkers and supervisors. She cannot perform work at a production rate pace, such as assembly line work.

AR 26. The ALJ determined transferability of job skills is not an issue because Plaintiff does not have past relevant work. AR 32.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[4] or on the testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted). "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work,

---

[4] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114–15 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)). They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability. *Id.* "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.*

either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources such as the Dictionary of Occupational Titles (DOT).[5] *Id.* Here, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including cleaner, housekeeping (DOT 323.687-014), power screwdriver operator (DOT 699.685-026), and poultry director (DOT 525.687-070). AR 32. As such, the ALJ determined Plaintiff was not disabled. AR 33.

**B. Medical Opinions And Other Medical Evidence**

Plaintiff argues that the ALJ erred by improperly evaluating the opinions of Ms. Davidson, Dr. Salvador-Moses, and Ms. Zavala. Pl.'s Mot. at 7:19–11:16. The Commissioner contends that the ALJ reasonably evaluated the medical evidence. Def.'s Mot. at 5:4–7:11.

In sum, for the reasons stated below, the Court concludes that the ALJ erred in his consideration and articulation of the medical opinions and other medical evidence in the record. Because the ALJ's errors impacted the ALJ's determination that Plaintiff could perform jobs in the national economy, the error was not harmless.

**1. Legal Standard**

For Social Security claims filed after March 27, 2017, the ALJ is required to assess the persuasiveness of medical opinions in the record using the regulations outlined in 20 C.F.R. §§ 404.1520c and 416.920c. *See Woods v. Kijakazi*, 32 F.4th 785, 791–93 (9th Cir. 2022) (embracing the Commissioner's new regulatory framework for evaluating medical opinions). Under these new regulations, the ALJ is asked to consider five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other facts including but not limited to a medical source's familiarity with the other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements. *See* 20 C.F.R. §§ 404.1520c(c)(1) –

[5] The DOT classifies jobs by their exertional and skill requirements. *See* 20 C.F.R. § 404.1566(d)(1); *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) ("Although criticized as having many outdated job descriptions, the DOT is typically the starting point for VEs to identify the occupations relevant for each claimant's residual functional capacities.") (cleaned up); *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").



United States District Court
Northern District of California

(5), 416.920c(c)(1) – (5). Of these five, the ALJ must address supportability and consistency in each assessment and may, but is not required to, explain how they considered the remaining three factors. *See id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Woods*, 32 F.4th at 791–92 (cleaned up); *see* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 792 (cleaned up); *see* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

The new regulations replace the former hierarchy of medical opinions and no longer require the ALJ to give greater weight to the medical opinions of treating physicians. *Woods*, 32 F.4th at 787; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Now, the ALJ is free to consider the medical opinions equally and may find an opinion more persuasive than others provided that substantial evidence supports such a finding. *Woods*, 32 F.4th at 787. Substantial evidence will be found when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. When rejecting a medical opinion as unsupported or inconsistent, the ALJ is required to provide an explanation supported by substantial evidence. *Woods*, 32 F.4th at 792. If the ALJ does so, then a court may not overturn the ALJ's decision "unless it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).

**2. Medical Opinion Of Caroline Salvadore-Moses, Ph.D**

Caroline Salvadore-Moses, Ph.D, is a consultative psychological examiner who evaluated Plaintiff in December 2023. AR 852–57. Dr. Salvadore-Moses reviewed Plaintiff's medical and psychiatric history, conducted a clinical interview with Plaintiff, assessed Plaintiff's intellectual functioning, and performed a mental status examination on Plaintiff. AR 852–54. Dr. Salvadore-Moses lists Plaintiff's diagnoses as posttraumatic stress disorder (PTSD) and major depressive disorder with psychotic features. AR 854. On the mental status exam, Dr. Salvadore-Moses found that Plaintiff had depressed mood with a labile affect, perseverative thoughts and worry, intermittent auditory hallucinations, and a tendency to become distracted by her flashbacks and intrusive memories. AR 853–54. Regarding intellectual functioning, Dr. Salvadore-Moses found Plaintiff has suboptimal abstract reasoning, poor fund of information, and suboptimal short-term memory. AR 854. Dr. Salvadore-Moses opined that Plaintiff's prognosis is "poor" and stated:

> Claimant has significant trauma history. She also has intermittent auditory hallucinations. Symptoms cause distress and lead to clinically significant impairment in various areas of functioning.

*Id.* Dr. Salvadore-Moses opined on Plaintiff's work-related abilities "[b]ased on behavioral observations, reported psychiatric history, and review of records, due to the extent of her mental health issues interfering with proper ability to conduct many tasks of daily living." AR 855. Dr. Salvadore-Moses found that Plaintiff is markedly impaired in her ability to attend to usual work situations, including attendance, safety, etc.; ability to deal with changes in a routine work environment; persistence; and ability to interact appropriately with supervisors and co-workers. *Id.* Plaintiff is moderately impaired in concentration and pace. *Id.* And Plaintiff is mildly impaired in her ability to understand and carry out simple instructions and tasks; ability to understand and carry out complex instructions and tasks; and ability to interact appropriately with the public. *Id.* Finally, Dr. Salvadore-Moses opined that "[d]ue to the nature and extent of her impairments, [Plaintiff] is unable to manage her own funds independently and will need assistance." *Id.*

The ALJ found Dr. Salvadore-Moses's opinion "partially persuasive," stating:

> The opinion for marked limitations in interaction, persistence, and

> dealing with changes are unsupported by findings that the claimant maintained adequate eye contact and friendly, cooperative behavior, adequate ability to perform math calculations, and capacity to perform serial 7s. In addition, the examiner did not report observed distractedness or interruptions during the exam. The opinion for marked impairment in these areas is also inconsistent with mental status findings that generally show a normal mood and affect, normal behavior, normal judgment, normal cognition and speech, and full orientation (Exs. 1F/24, 27, 32, 37; 2F/13; 3F/4; 4F/18, 5F/26, 34, 44; 9F/26).

AR 30–31.

Plaintiff argues that the ALJ fails to discuss the consistency of Dr. Salvadore-Moses's opinion with the record and fails to discuss why the opinion's findings regarding Plaintiff's marked limitations are not supported by the record. Pl.'s Mot. at 9:22–11:13. The Commissioner contends that the ALJ concluded that the marked limitations were not supported by Dr. Salvadore-Moses's findings and that the opinion was inconsistent with other mental status exams throughout the record. Def.'s Mot. at 5:13–6:26.

Here, the Court finds that the ALJ's persuasiveness finding regarding Dr. Salvadore-Moses's opinion is not supported by substantial evidence. It is black letter administrative law that an ALJ must provide a reasoned explanation for their findings, including in the context of adjudicating social security claims. *See Woods*, 32 F.4th at 792 (explaining ALJ cannot reject a medical opinion "as unsupported or inconsistent without providing an explanation supported by substantial evidence"); *see also Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, 1996 WL 374184, at *7 (S.S.A. July 2, 1996) ("*Medical opinions.* The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). However, as discussed below, the ALJ failed to provide a reasoned explanation, supported by substantial evidence, for *why* Dr. Salvadore-Moses's opinion is unsupported or inconsistent with the record. This was error.

Regarding supportability, the ALJ states that Plaintiff's partially normal mental status and partially normal intellectual functioning do not support Dr. Salvadore-Moses's findings that Plaintiff has marked limitations in some work-related abilities. AR 30–31. But the ALJ does not explain how these normal findings are non-supportive of Dr. Salvadore-Moses's assessed

limitations. Notably, the ALJ focuses only on the normal portions of the mental status exam and intellectual functioning but does not discuss Dr. Salvadore-Moses's findings related to Plaintiff's abnormal findings on these measures. *See* AR 853–54 (noting several abnormal findings); Pl.'s Mot. at 10:5–12 ("The supportability analysis is also very weak and boils down to the fact that [Plaintiff] was able to complete the evaluation."). Importantly, Dr. Salvadore-Moses opined that Plaintiff's diagnoses cause intermittent symptoms that "lead to clinically significant impairment in various areas of functioning." AR 853–54. "[I]t is not inconsistent that one might think clearly, remember well, and be able to count—during isolated examinations—but still be incapable of functioning in a workplace five days a week, eight hours a day, particularly if one is susceptible" to episodic auditory hallucinations, flashbacks, and intrusive memories on account of diagnosed PTSD and major depressive disorder with psychotic features. *Ortiz v. Bisignano*, 179 F.4th 691, 703 (9th Cir. 2026). Therefore, the Court finds the ALJ erred because he did not provide substantial evidence for his conclusion that Dr. Salvadore-Moses's opinion was not fully supported by Dr. Salvadore-Moses's examination. *Cf. Jalissa P. v. Bisignano*, No. 24-cv-06465-SI, 2025 WL 2682578, at *8 (N.D. Cal. Sept. 19, 2025) ("Under the regulations, it was error for the ALJ not to address the supportability factor.").

Regarding consistency, the ALJ states that Dr. Salvadore-Moses's opinion that Plaintiff has some marked limitations is inconsistent with other mental status exams in the record. AR 30–31; Def.'s Mot. at 6:17–26. But the ALJ does not explain *why* the findings in Dr. Salvadore-Moses's opinion are inconsistent with the other evidence in the record. Pl.'s Reply at 3:1–10. In fact, some of the ALJ's cited "normal" mental status findings instead show abnormal findings. *See* AR 30–31 (citing AR 516, 732); AR 516 ("Mixed anxiety and depressive disorder—mood has been down d/t fibromyalgia and life stressors."); AR 732–33 ("Pt with depressed/anxious mood . . . . Reports passive SI. . . . Pt with significant trauma history referred to therapy for symptoms of depression and anxiety."). Nor does the ALJ grapple with the record evidence documenting Plaintiff's abnormal mental status or explain why that evidence is not consistent with Dr. Salvadore-Moses's opinion. *See* Pl.'s Reply at 3:11–15 (citing, *e.g.,* AR 406 (noting several symptoms of depression, anxiety, and trauma), 437 (noting depressed/anxious mood, history of

suicidal ideation, and significant trauma history). In sum, the ALJ fails to explain why Plaintiff's conditions are "inconsistent with [her] occasionally presenting with normal behavior and affect." *Ortiz*, 179 F.4th at 702. Therefore, the Court finds the ALJ erred because he did not provide substantial evidence for his conclusion that Dr. Salvadore-Moses's opinion was inconsistent with the record. *Cf. Thomas S. v. Comm'r of Soc. Sec.*, No. C21-05213-MAT, 2022 WL 268844, at *4 (W.D. Wash. Jan. 28, 2022) (finding error where "the ALJ failed to address whether [doctor's] opinion is more or less consistent 'with the evidence from other medical sources and nonmedical sources in the claim' and why [doctor's] opinion was more or less persuasive pursuant to the consistency factor").

Plaintiff further argues that the ALJ erred in failing to discuss the marked limitation in the ability to attend to usual work situations. Pl.'s Mot. at 10:2–4. The Commissioner contends that it is clear that the ALJ disagreed with all Dr. Salvadore-Moses's marked limitations. Def.'s Mot. at 6:3–16. Not so. While the ALJ specifically names three of the four marked limitations, the ALJ never discusses the marked limitation of ability to attend to usual work situations. *See* AR 30–31; Pl.'s Reply at 2:21 ("Defendant's argument also improperly relies on post hoc rationalization."). This was error. The RFC does not include any limitations on work attendance. AR 26. Thus, the ALJ was required to explain why he rejected Dr. Salvadore-Moses's opinion that Plaintiff is markedly impaired in her ability for usual work attendance. SSR 96-8P, 1996 WL 374184, at *7; *see* Pl.'s Reply at 2:14–24. Similarly, Plaintiff argues the ALJ erred by including in the RFC that Plaintiff can interact with supervisors and coworkers despite evidence reflecting marked social limitations. Pl.'s Mot. at 13:11–14:9; Pl.'s Reply at 7:1–10. Again, the ALJ was required to explain why he rejected Dr. Salvadore-Moses's opinion that Plaintiff is markedly impaired in her ability to interact appropriately with supervisors and co-workers as the ALJ adopted an RFC that conflicts with this opinion. As discussed, the ALJ failed to do so. The Court therefore agrees with Plaintiff that because the ALJ erred in rejecting Dr. Salvadore-Moses's opinion, the RFC necessarily omits medically supported limitations. Pl.'s Mot. at 14:10–21; Pl.'s Reply at 7:10–14.

Accordingly, the ALJ erred in his analysis of both the supportability and the consistency of Dr. Salvadore-Moses's opinion. Because the ALJ's errors necessarily impacted the RFC, remand

United States District Court
Northern District of California

is warranted.

### 3. Other Medical Evidence

#### a. Danielle Davidson, LCSW

Danielle Davidson, LCSW, is a licensed clinical social worker who submitted a letter regarding Plaintiff's participation in psychological and psychosocial care at Partnerships for Trauma Recovery. AR 863. Between June 2023 and February 2024, Ms. Davidson met with Plaintiff over twenty-one sessions which included a comprehensive psychosocial assessment and subsequent psychotherapy. *Id.* Ms. Davidson states that Plaintiff's

> report of traumatic experiences, and symptoms of PTSD including depression, anxiety and interpersonal stressors are congruent with what is common for the international survivors of human rights abuses and interpersonal violence whom we see at Partnerships for Trauma Recovery.

*Id.* Further, Ms. Davidson states that she may be contacted for further information if it would be helpful. *Id.*

Regarding Ms. Davidson, the ALJ states:

> [A]s to the claimant's mental impairments, the record does not reflect findings consistent with disabling mental impairment. The claimant has received periodic mental health therapy for diagnoses of PTSD, depression, and anxiety (*see, e.g.,* Exs. 1F/38-45; 8F). In correspondence dated February 20, 2024, Danielle Davison [*sic*], LCSW, indicated that the claimant had been receiving psychotherapy through a trauma recovery program since June 2023 (Ex. 8F/1). However, the record does not include corresponding therapy notes.

AR 29.

Plaintiff argues that the ALJ disregards the medical opinion of Ms. Davidson without fulfilling his duty to complete the record and fails to discuss the consistency of Ms. Davidson's opinion with the record. Pl.'s Mot. at 8:14–9:21. The Commissioner contends that the ALJ had no duty to further develop the record and that Ms. Davidson's letter is not a medical opinion. Def.'s Mot. at 3:12–4:2, 4 n.4.

Here, the parties disagree on whether the ALJ was obligated to develop the record by taking action to obtain Ms. Davidson's therapy notes. An ALJ has a duty to "develop the arguments both for and against granting benefits." *Obrien v. Bisignano*, 142 F.4th 687, 695 (9th

Cir. 2025) (citation omitted). While the claimant "bears some measure of responsibility to develop the *evidence* needed to support his or her claim for benefits," the ALJ's duty to develop the record further is triggered where "the record is inadequate to allow for proper evaluation of the evidence." *Id.* at 704–05 (emphasis in original) (cleaned up). Such is the case here. Plaintiff submitted evidence of her mental health impairments from her long-term treatment provider, Ms. Davidson. AR 863. This "expressly alerted the ALJ to the existence of highly relevant treatment records." Pl.'s Reply at 3:21–22. The ALJ seemingly found that Ms. Davidson's letter did not support Plaintiff's testimony regarding how her mental impairments affect her work-related abilities because Ms. Davidson's letter was not accompanied by treatment notes. AR 29; *see* Pl.'s Reply at 4:3–8. As Plaintiff points out, whether the letter constitutes a medical opinion is immaterial—evidence corroborating Plaintiff's testimony that her PTSD, anxiety, and trauma-related symptoms foreclose her ability to perform jobs in the national economy is critical to accepting Plaintiff's testimony and formulating an appropriate RFC. Pl.'s Reply at 4:3–14; *see Obrien*, 142 F.4th at 699 ("The ALJ always has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered[.]") (cleaned up). As such, because additional development of the record by the ALJ is required to permit an adequate determination regarding Plaintiff's testimony, the ALJ's decision to reject Plaintiff's testimony is not supported by substantial evidence and remand is warranted. *Obrien*, 142 F.4th at 705; *see infra*, Part V.C (discussing Plaintiff's testimony).

**b. Trinidad Zavala, MFTI**

Trinidad Zavala, MFTI, is a supervised intern therapist who submitted a letter regarding Plaintiff's psychotherapy services at Multi-Lingual Counseling Incorporated. AR 1121. Ms. Zavala states that Plaintiff meets DSM IV criteria for PTSD diagnosis; Plaintiff has symptoms including "deep depression with daily bouts of crying, intense anxiety and nervousness, and difficulty concentrating"; and Plaintiff "has difficulty engaging in daily living activities due to her high level of depression and anxiety, and is often triggered by memories of the past." *Id.*

Plaintiff argues that the ALJ erred by failing to address the medical opinion of Ms. Zavala in the ALJ's opinion. Pl.'s Mot. at 11:14–16. The Commissioner contends that the ALJ was not



United States District Court
Northern District of California

United States District Court
Northern District of California

obligated to evaluate Ms. Zavala's letter as a medical opinion because it fails "to specify what Plaintiff would or would not be able to do, or the degree to which Plaintiff would be limited." Def.'s Mot. at 7:1–11.

Here, the parties disagree on whether Ms. Zavala's letter constitutes a medical opinion. As discussed below, the Court finds that the ALJ erred in analyzing Plaintiff's subjective complaints regarding how her physical and mental impairments affect her ability to attend work. Thus, the Court need not determine whether the evidence at issue constitutes a formal medical opinion—the ALJ must consider this evidence in evaluating Plaintiff's subjective complaints.

**C. Subjective Complaints**

Plaintiff argues that the ALJ erred in evaluating Plaintiff's testimony by (1) over relying on Plaintiff's lack of mental health treatment[6]; and (2) failing to provide clear and convincing reasons for rejecting her testimony. Pl.'s Mot. at 7:24–8:11, 11:18–12:19. The Commissioner contends that the ALJ reasonably discounted Plaintiff's subjective symptom testimony. Def.'s Mot. at 1:7–5:3.

**1. Legal Standard**

The Ninth Circuit has established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no

[6] Plaintiff argues that the ALJ erred by dismissing Plaintiff's statements about her "mental impairments due to a lack of treatment without considering the reasons why." Pl.'s Mot. at 7:24–8:11 (citing AR 29). The Commissioner responds that "the ALJ did not cite lack of mental health treatment as a reason to discount Plaintiff's symptom testimony." Def.'s Mot. at 5 n.5. The Court agrees; while the ALJ found that evidence associated with Plaintiff's mental health treatment did not support her testimony, the ALJ did not find that an absence of treatment discredited Plaintiff's testimony. *See* AR 27–29. Plaintiff does not further press this issue in her Reply. *See generally* Pl.'s Reply.

> evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison*, 759 F.3d at 1014–15 (emphasis in original) (cleaned up). Under this standard, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (cleaned up). "In other words, to reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion." *Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021); *see also Lambert v. Saul,* 980 F.3d 1266, 1268 (9th Cir. 2020) ("[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining it.").

The ALJ must also explain why the cited evidence is inconsistent with the particular symptom alleged; evidence relevant to a different symptom does not suffice. *Ferguson*, 95 F.4th at 1200; *see also Ortiz*, 179 F.4th at 698–99 (holding that the ALJ erred in rejecting a pain-based limitation on the basis of gait, strength, and range-of-motion testing where those routine observations said nothing of the claimant's pain, because a claimant "might be able to push herself to exhibit full strength or range of motion, or a normal gait, while also experiencing pain"). Thus, record citations used to discredit symptom testimony must address the symptom at issue. *Ortiz*, 179 F.4th at 705–06.

**2. Analysis**

At the hearing before the ALJ, Plaintiff testified to the following.[7] Plaintiff has not been able to work since 2014 because she is feeling bad. AR 49. In the past five years, she was rarely paid cash to take care of someone's kids for two or three hours. AR 47–48. In the past, Plaintiff was fired from different jobs for being too slow and not having the ability to do the work. AR 50. Plaintiff stopped taking medications for depression, anxiety, or PTSD because the medication did

---

[7] Plaintiff testified with the assistance of a Spanish language interpreter. AR 41. The hearing transcript reflects that the interpreter had difficulty hearing Plaintiff, and several parts of the transcript are marked as "[Inaudible]." *See* AR 41–55.

not work anymore and Plaintiff started to feel worse. *Id.* She restarted her medications two weeks ago after being off them for two months because she was unable to talk with her doctor as the doctor was no longer working there. AR 50–51. Plaintiff was seeing that same doctor for therapy but has not called for a new doctor because sometimes she just does not want to do anything. AR 51.

Plaintiff lives with her fifteen year-old son and nine year-old daughter and provides care for them. *Id.* Her son goes to school on his own, and Plaintiff cooks, cleans, and picks up her daughter from school every day. AR 51–52. Plaintiff does not help with homework because of her problem. AR 52. She hates her disease because it does not let her "leave inside with the kids" which is "the worst thing in the world." *Id.* Plaintiff's disease prevents her "from doing anything, it's like being dead while you're living." *Id.* Each day is different for Plaintiff—some days she wakes up at 10 a.m. and other days she wakes up at 7 a.m. AR 54. She spends her day cleaning and cooking before picking her daughter up from school and gets frustrated because it is difficult for her to keep the house clean. *Id.*

Plaintiff does not think that she can work forty hours a week because she has fibromyalgia and there are weeks she feels she cannot leave her bed. AR 52. She would miss work often because of how she is feeling, which is why in the past she worked here and there for three hours watching kids. AR 53. Plaintiff does not think that a job would accept that she can work one day and then cannot work another day. AR 52.

Plaintiff was going to the gym and lifting around twenty to twenty-five pounds because the doctor recommended it. AR 53. She would try to go to the gym daily to do cardio and lift weights. AR 53–54. Plaintiff has not gone to the gym for the past two months because of the pain, but she wants to go back again. *Id.*

Plaintiff has sought medical help in Tijuana, Nicaragua, and Guatemala by flying from the United States to those places and back. AR 54–55. She also had reason to go to Nicaragua because she is from there and to Guatemala because her kids' family is from there. AR 55. Plaintiff believes she went to the other countries in the past five years. AR 54–55. It is unclear

how often Plaintiff traveled abroad in the past five years.[8]

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," and did not make any findings that Plaintiff was malingering. AR 27. Thus, to find Plaintiff's testimony not credible, the ALJ was required to "mak[e] specific findings as to credibility and stat[e] clear and convincing reasons for each." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ found that "[d]espite the claimant's alleged mental and physical limitations, her symptoms have not prevented her from completing activities of daily living and independent self-care, from travel, or from engaging in activities around others." AR 27.

Plaintiff argues that the ALJ erred in evaluating Plaintiff's statements because the ALJ (1) relies on activities of daily living that are not work transferable and imposes a standard of utter disability on Plaintiff; and (2) fails to consider that the opinions of Ms. Davidson, Dr. Salvadore-Moses, and Ms. Zavala all corroborate Plaintiff's testimony. Pl.'s Mot. at 11:18–12:19. The Commissioner contends that the ALJ reasonably determined that Plaintiff's testimony was not entirely consistent with the medical and other evidence of record. Def's Mot. at 1:7–5:3.

Here, the Court finds that the ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. Simply put, while the ALJ correctly notes that Plaintiff testified her physical and mental impairments *sometimes* make her unable to leave her bed and *sometimes* make her not want to do anything, the ALJ fails to explain how the record evidence discredits Plaintiff's specific and intermittent symptoms. AR 27. First, the ALJ erred in discrediting Plaintiff's testimony as to her pain from fibromyalgia and how it makes her unable to leave her bed at times. The ALJ found that despite Plaintiff's report of pain from fibromyalgia, physical examinations "show minimal signs of weakness, tenderness, or synovitis, good ranges of motion, intact neurologic findings, and no gait abnormalities." AR 28; *see* Def.'s Mot. at 1:19–2:1 ("[T]he ALJ found Plaintiff's allegations inconsistent with the medical evidence and Plaintiff's

[8] The ALJ asked, "How often do you go?" Plaintiff responded "I haven't gone over there [Inaudible]. When I go I take my time to try to find a doctor. When I went to Tijuana it was for that." AR 55.

United States District Court
Northern District of California

course of treatment.”). “But findings of normal gait, strength, and range of motion are not necessarily inconsistent” with Plaintiff’s pain testimony. *Ortiz*, 179 F.4th at 699. Indeed, none of the ALJ’s cited evidence states that Plaintiff exhibited normal gait, strength, and range of motion *without pain*. *See* AR 28 (citing AR 417, 419, 422, 429, 441, 525, 536, 542, 651, 654, 666, 722, 760, 932); *cf. Ortiz*, 179 F.4th at 699. “To discredit subjective symptom testimony, the ALJ must rely on record citations that discredit the symptom at issue, not other symptoms.” *Ortiz*, 179 F.4th at 706. Because the findings the ALJ relied upon to find an inconsistency do not account for Plaintiff’s relevant pain, the ALJ erred by relying on that evidence to reject Plaintiff’s testimony that her pain would cause her to miss work often. *See id.* at 699–700 (explaining pain is non-exertional limitation that may affect claimant’s ability to work and that “strength and the physical ability to perform work are not necessarily inconsistent with debilitating pain, and . . . we do not expect a claimant to push through severe pain to perform work”).

Second, the ALJ erred in discrediting Plaintiff’s testimony as to her mental health conditions and how they make her fearful of leaving her house and prevent her from doing anything at times. The ALJ found that Plaintiff’s “mental status exams did not corroborate her allegations.” Def.’s Mot. at 2:2–9 (citing AR 29). But the cited mental status findings are not inconsistent with Plaintiff’s alleged intermittent fear of going outside and inability to function. Pl.’s Reply at 6:1–9. “The record citations are only snapshots of [Plaintiff], generally in the context of routine observations and outside of mental health treatment.” *Ortiz*, 179 F.4th at 702; *see* AR 29 (citing AR 417, 420, 425, 430, 516, 628, 667, 732, 740, 750, 894). They are not a reason to discredit Plaintiff’s testimony. The ALJ next found that “Plaintiff did not consistently take medication for her mental conditions.” Def.’s Mot. at 2:10–19 (citing AR 29). It is true that “[i]n order to get benefits, [a claimant] must follow treatment prescribed by [their] medical source(s) if this treatment is expected to restore [their] ability to work.” 20 C.F.R. § 416.930(a). However, none of the ALJ’s cited evidence states that duloxetine improved Plaintiff’s symptoms of fear of leaving the house and not feeling like doing anything. *See* AR 29 (citing AR 411, 421, 519, 762, 856, 895, 930, 1042) (“The claimant has also been prescribed duloxetine to treat both fibromyalgia and her mental health symptoms, but has reported varied effectiveness and has not

taken it consistently.”). Because there is not substantial evidence in the record for the proposition that duloxetine resolved Plaintiff’s mental health symptoms, the ALJ erred in relying on whether Plaintiff took medication as a reason to disregard her testimony. *Ortiz*, 179 F.4th at 705. Finally, the ALJ found that despite Plaintiff’s reports of fear of leaving the house, “[s]he has been able to travel internationally on multiple occasions and reports that she is able to care for herself and her family independently.” AR 29; *see* Def.’s Mot. at 2:20–3:11 (citing AR 28–29). But there are problems with this finding. For one, the ALJ points to evidence that Plaintiff drives her daughter to and from school; however, Plaintiff testified only that she picks her daughter up from school. AR 28–29, 51–52. Indeed, Plaintiff’s testimony that some days she wakes up at 10 a.m. undercuts a finding that Plaintiff takes her child to school daily. AR 54. More importantly, the “ALJ did not make any ‘specific findings’ about what these activities require of [Plaintiff] on a daily and weekly basis and how [her] performance of them demonstrates [her] fitness to work full days and weeks, on time, with appropriate workplace behavior,” given the episodic nature of her symptoms. *Ortiz*, 179 F.4th at 703. In other words, the ALJ did not explain how Plaintiff’s testimony about her activities is inconsistent with her testimony about the severity of her mental health symptoms. Plaintiff can both do nothing when she experiences extreme fear of leaving the house and engage in daily or periodic activities when she does not. *Ferguson*, 95 F.4th at 1203. Plaintiff “need not vegetate in a dark room to qualify for disability.” *Id.* (cleaned up); *see* Pl.’s Reply at 6:16–25.

Accordingly, the Court concludes that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff’s subjective symptoms. As discussed, this error was not harmless because it impacted the ALJ’s determination that Plaintiff could perform jobs in the national economy. Remand is thus warranted.

### D. Remedy

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits. *See G.P. v. Dudek*, No. 24-cv-00088-VKD, 2025 WL 945813, at *4 (N.D. Cal. Mar. 28, 2025) (“If the Court determines that there has been reversible legal error, the Court must then decide whether to remand for further proceedings or for an automatic award of benefits.”). The Social Security Act permits courts to enter a judgment “affirming, modifying,

or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019 ("Accordingly, every Court of Appeals has recognized that in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits."). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

"In determining whether to remand for benefits, the Ninth Circuit has devised a 'three-part credit-as-true standard.'" *Dwight F. v. O'Malley*, No. 22-cv-07218-DMR, 2024 WL 3580823, at *2 (N.D. Cal. July 29, 2024) (citing *Garrison*, 759 F.3d at 1020). Courts use the credit-as-true rule to take subjective symptom testimony or medical opinion evidence "to be established as true." *Garrison*, 759 F.3d at 1019–20. Under the following tripart credit-as-true standard, each part must be satisfied for a court to remand to an ALJ with instructions to calculate and award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose;
>
> (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and
>
> (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020; *see Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) ("We conclude that each of the credit-as-true factors is satisfied and thus that remand for the calculation and award of benefits is warranted.").

However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther*, 891 F.3d at 877 (cleaned up). It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).

Here, Plaintiff argues that the Court should remand for payment of benefits because had the ALJ properly evaluated the medical evidence and Plaintiff's testimony, the ALJ would have found Plaintiff disabled. Pl.'s Mot. at 14:23–15:18. The Commissioner contends that the Court should affirm its decision. Def.'s Mot. at 8:7–19.

The Court finds that remand for the calculation and award of benefits is not warranted. Even crediting Plaintiff's discredited testimony regarding her intermittent pain, fear of leaving the house, and feelings of doing nothing, along with the medical opinion of Dr. Salvadore-Moses, as true, the Court cannot say that there is "no doubt as to Plaintiff's disability." *Contra Jalissa P.*, 2025 WL 2682578, at *14. To be sure, "[t]he Ninth Circuit has consistently remanded for an award of benefits in cases where a VE was posed a hypothetical that included the RFC that a claimant would possess if improperly discredited opinions or testimony were taken as true." *Tennille S. v. Kijakazi*, No. 21-cv-09779-SI, 2023 WL 122396, at *13 (N.D. Cal. Jan. 6, 2023). But that is not the case here. If credited as true, Plaintiff's testimony establishes that she would not be able to attend work some days due to her physical and mental impairments and would often miss work. AR 51–52. And if credited as true, Dr. Salvadore-Moses's opinion establishes that Plaintiff is markedly impaired in in her ability to attend to usual work situations, including attendance, safety, etc.; ability to deal with changes in a routine work environment; persistence; and ability to interact appropriately with supervisors and co-workers. AR 855. The ALJ asked the Vocational Expert (VE) at the hearing whether a claimant who was absent once per month from work could perform jobs in the national economy. AR 62. The VE opined that this limitation was work preclusive. *Id.* The ALJ next asked the VE whether a claimant who was off task ten percent of an eight-hour workday could perform jobs in the national economy. *Id.* The VE opined that this limitation was work preclusive. *Id.* Further, while the ALJ asked the VE about a claimant who "could briefly and superficially interact with coworkers and supervisors," the ALJ did not ask about a claimant with limitations in interacting appropriately with those individuals. AR 56–62. The VE's answers do not conclusively establish disability as there is no information in the record on whether Plaintiff's symptoms or marked impairments would cause her to miss work once every month or be off task for more than ten percent of the workday. Nor is there record evidence on

United States District Court
Northern District of California

whether marked impairment in the ability to act appropriately with supervisors and coworkers is work preclusive.

If the case is remanded and the ALJ obtains VE testimony that aligns with the appropriate RFC finding, more detailed information can be developed about the impact of Plaintiff's physical and mental impairments on her work attendance and performance and her limitations described in the medical opinions. As such, it is not clear that the ALJ would be required to find Plaintiff disabled after clarifying these issues, and remand for further proceedings is therefore appropriate. *See Derek S. v. Acting Comm'r of Soc. Sec.*, No. 3:20-cv-6169-RAJ, 2021 WL 3400979, at *6 (W.D. Wash. Aug. 4, 2021) (holding remand for further proceedings warranted where it "would allow the ALJ the opportunity to present a proper hypothetical to a vocational expert"); *Solomon v. Comm'r of Soc. Sec. Admin.*, 376 F. Supp. 3d 1012, 1021 (D. Ariz. 2019) (holding remand appropriate where ALJ omitted certain limitations from the hypothetical posed to the vocational expert); *Terrazas v. Astrue*, 726 F. Supp. 2d 1139, 1147 (E.D. Cal. 2010) (holding remand for further proceedings appropriate because "[r]eliance on a hypothetical that fails to include all accepted limitations is insufficient to carry the agency's burden of proving the ability to engage in alternative work"); *Hutton v. Astrue*, 491 Fed. App'x 850, 850–51 (9th Cir. 2012) (holding ALJ erred "in failing to include Hutton's post-traumatic stress disorder . . . in his hypotheticals to the vocational expert at Step Five," after finding it caused Hutton "'mild' limitations in the areas of concentration, persistence, or pace"); *Samples v. Comm'r. of Soc. Sec. Admin.*, 466 Fed. App'x 584, 586 (9th Cir. 2012) (holding remand for further proceedings appropriate where hypothetical question the ALJ posed to vocational expert regarding claimant's ability to find work in national economy was defective when it ignored one of the doctor's diagnoses of functional limitation on claimant's ability to accept instructions from supervisors and to respond appropriately to criticism from supervisors).

Accordingly, while remand is appropriate for the reasons discussed above, an award of immediate benefits is not appropriate because there remains some doubt that Plaintiff is or was disabled.

## VI. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion, **DENIES** Defendant's cross-motion, and **REVERSES** the ALJ's decision. This case is **REMANDED** for further administrative proceedings consistent with this order. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: November 2, 2026

THOMAS S. HIXSON
United States Magistrate Judge